## SLOCUMB v WURST

Ohio Appeals, 2nd Dist, Franklin Co

No 2747. Decided July 6, 1937

Carl H. Valentine, Columbus, for plaintiff-appellant.

Clark Campbell, Columbus, E. A. Durbin, Columbus, and Thomas H. Clark, Columbus, for defendant-appellee.

### OPINION

By BARNES, PJ.

The above entitled cause is now being determined on plaintiff's appeal from the judgment of the Common Pleas Court of Franklin County, Ohio. The action is one for claimed wrongful death.

Plaintiff's decedent was killed in an automobile accident occurring at the intersection of Mound Street and Kelton Avenue in Columbus, Ohio, about 10:30 A. M. Sunday, December 22, 1935. The car in which the deceased was riding was owned by her, and was being driven by one Paul Fryburg, a divinity student at Capital University, Divinity Hall. Miss Slocumb and Mr. Fryburg were very close friends, intending at some future date to be married, although no engagement had been announced. On the day in question Mr. Fryburg had borrowed the car to drive to Orient, Ohio, to conduct religious services at the Institution for the Feeble-Minded. At the time of and immediately preceding the accident the automobile driven by Mr. Fryburg was moving on Mound Street in an easterly direction. As they approached Kelton Avenue the speed of the car was reduced from 20 to 25 miles per hour to 10 to 15 miles per hour.

At about this same time the defendant Genevieve Wurst was operating her automobile on Kelton Avenue in a northerly direction and before reaching the intersection, at a speed of approximately 25 miles per hour. This speed was substantially reduced before reaching the intersection of Mound Street. One witness says, reduced to about 20 miles per hour, and according to the defendant, to a stop. Both cars were operated on their own right hand side of the street. It is an amazing circumstance that neither saw the approach of the other car into the intersection.

Neither street was a main thoroughfare or any of the other classifications provided under the Code which prescribes right of way.

It therefore follows that the defendant, under the express terms of the statute, if lawfully driving, had the right of way. The applicable right of way statute reads as follows:

"Sec 6310-28a GC. Excepting where otherwise hereinafter provided the operator of a vehicle shall yield the right of way at the intersection of its path and the path of another vehicle to the vehicle approaching from the right."

Sec 6310-28 GC is applicable and reads as follows:

"Sec 6310-28 GC. 'Right of way' means the right of a vehicle to proceed uninterruptedly in a lawful manner in the direction in which it is moving in preference to another vehicle approaching from a different direction into its path."

The day of the accident was very cold and the street somewhat slippery.

At the close of plaintiff's testimony coun-

sel for defendant interposed a motion for a directed verdict, which motion was sustained and a verdict returned accordingly. Thereafter motion for new trial was overruled and judgment entered for the defendant on the verdict. This is the final order from which appeal on question of law was taken by the plaintiff. Appellant presents the following assignments of error:

"First: In sustaining defendant's motion to strike from the petition the following words: 'at a greater speed than would permit her to bring it to a stop within the assured clear distance ahead.'

"Second: In directing the jury to return a verdict in favor of the defendant.

"Third: In overruling plaintiff's motion for a new trial.

"Fourth: In that the decision and judgment are not sustained by sufficient evidence and are contrary to law."

Very able and comprehensive briefs are filed by counsel representing the parties. Plaintiff's amended petition contained the following allegations of claimed acts of negligence on the part of the defendant:

"Said defendant carelessly and negligently operated her said car by driving same at a rate of speed of approximately forty miles per hour, at a speed greater than is reasonable or proper, having due regard to the traffic, surface and width of said highway. and of the other conditions then existing, without due regard for the safety and rights of occupants of other vehicles, so as to endanger the life, limb and property of other persons while in the lawful use of said highways, by entering said intersection without looking to the right or left and without giving any signal by horn or otherwise, by failing and neglecting to stop her said car when she observed or by the exercise of reasonable care could have observed the car in which said decedent was riding as aforesaid in the path of her approaching car, and so as to collide with said car in which said decedent was riding, striking the same in the right side and at or near the region of the right rear wheel."

The original petition contained the same allegations of negligence and also the following:

"At a greater speed than would permit her to bring it to a stop within the assured clear distance ahead."

Counsel for appellant in his oral argument and also in his brief admits that there was no testimony supporting the claimed speed of 40 miles per hour. No witness placed the speed of defendant's car at more than 25 miles per hour and that was before it reached the intersection.

Counsel for plaintiff in the original petition sought to invoke the assured clear distance ahead provisions of §12603 GC. Upon defendant's motion this allegation of the petition was stricken. This is one of the errors complained of. We think the trial court was right in striking this allegation of the petition. This provision of §12603, GC, could have no application under the alleged facts. Our court had under consideration a somewhat similar question in a Montgomery County case, **Proctor v White**, decided June 6, 1936, and found in **22 Abs 115**. On page 117 of the opinion Judge Hornbeck, speaking for the court, used the following language:

"The assured clear distance ahead statute, §12603, GC, has application to anything in the line of vision of the motorist in the assured clear distance ahead which is static or present long enough for him to observe it and bring his car to a stop, but can have no application to a movement by a person into the line of vision of a motorist so suddenly that exercising ordinary care he has neither the space nor opportunity to stop his car."

To give effect to the assured clear distance provision of the Code would negative the provisions of the right of way sections.

The sole and remaining question for determination revolves around the action of the trial court in directing a verdict. As we understand this action was based on the decision of the Supreme Court in **Morris v Bloomgren, 127 Oh St 147**. After a careful examination of the record in the instant case we have earnestly considered this case, in 127 Oh St, supra. It is our conclusion that the cited case very positively supports the judgment of the trial court. As we view it every argument advanced by counsel for appellant is answered through this decision. It would serve no useful purpose to make any further analysis.

The judgment of the lower court will be sustained, and plaintiff's appeal dismissed with costs.

Entry may be drawn accordingly.

### CONCURRING OPINION
By HORNBECK, J.

I concur in the judgment of affirmance because of the sound proposition of the

syllabus in Morris v Bloomgren, and for that reason only.

The facts in this case exemplify the limit to which the doctrine of the Morris v Bloomgren case will lead us. The plaintiff's driver had all but cleared the intersection and defendant's car struck plaintiff's car at the right rear wheel, yet it is the law that defendant's car had the absolute right of way provided only she was driving in a lawful manner. The last chance doctrine which is discussed in Morris v Bloomgren avails plaintiff nothing because it does not appear that defendant knew of plaintiff's position of danger,— though of course, she could have known.

### DISSENTING OPINION

By GEIGER, J.

I find myself obliged to dissent from the opinion of the majority of the court.

I fully recognize the compelling force of Morris v Bloomgren, 127 Oh St 147, touching the privileges conferred upon the driver of an automobile approaching from the right.

Sec 6310-28, GC, defines "right of way," and §6310-28a GC provides that the operator of a vehicle shall yield the right of way at the intersection to the vehicle approaching from the right.

In the case at bar, the vehicle approaching from the right clearly has the right of way, but only on condition that it approached the intersection "in a lawful manner."

Judge Jones, in the case last cited, at page 156, clearly states the law as follows:

"Secs 6310-28 and 6310-28a, GC, confer an absolute right of way upon the motor vehicle approaching from the right, qualified only by the requirement that, in proceeding uninterruptedly in the direction in which it is moving, it must proceed in a lawful manner. The phrase "in a lawful manner" is the pole star of the traffic sections, pointing out the sine qua non obligation cast upon the vehicle approaching from the right, which, to maintain its right, it must observe. Why so scant attention was given to this phrase in the Heidle and Candy Co. cases, supra, we are unable to conjecture."

At the close of plaintiff's testimony, counsel for defendant interposed a motion for a directed verdict which was sustained.

Plaintiff's petition contained certain allegations of negligence. If there was testimony supporting any of these claims, it is clear that the court erred in instructing a verdict.

The allegation of the petition was that the speed was greater than was reasonable and proper, with due regard to the traffic, surface, and width of the highway, and of other conditions then existing, without due regard for the safety and rights of the occupants of other vehicles. I think these allegations are broad enough to include the matters hereinafter discussed.

Sec 12603, GC, provides that "It shall be prima facie lawful for the operator of a motor vehicle to drive the same at a speed not exceeding the following:

"Twenty miles per hour in the business or closely built-up portions of a municipal corporation.

"Thirty-five miles per hour in all other portions of a municipal corporation. * * *

"It shall be prima facie unlawful for any person to exceed any of the foregoing speed limitations."

The evidence in this case as to speed at which defendant's car approached the intersection is conflicting, but was approximately at twenty-five miles per hour, which was reduced, before reaching the intersection, to twenty miles per hour, and, according to the defendant, to a stop.

The evidence tends to show that on the southwest corner of the street there was a building, which together with a high bank and a hedge on the bank, prevented the car approaching on Mound Street from the west from having a clear vision of Kelton Avenue, and naturally the same structure would obscure the view of the car going northward on Kelton Street.

If the car on Kelton Street was not being operated beyond a speed of twenty miles an hour, then there would have been no violation of the speed provision of §12603 GC referred to. But, as stated before, the evidence is conflicting.

The question then arises as to whether the twenty miles provision applies, as it controls the speed of cars in the business or closely built up portions of a municipal corporation.

There is not a great amount of evidence from which we may determine whether the point in question was in the closely built-up portions of a municipal corporation.

In the case of **Commercial Traction Co. v Konte, 122 Oh St 514,** we have the following statement of the law:

"The phrase 'closely built-up portions of a municipal corporation', as used in §12603, GC (110 Ohio Laws, 138), relates to the

proximity of buildings to the road or highway, rather than the proximity of buildings to each other."

The court says, on page 520, through Robinson, J.:

"In a portion, however, of a municipality where the buildings, at intersections and at crossings, are built upon the street lot line, the view of the user of the street at every such intersection and crossing is obstructed by the building between him and the intersection or crossing, and the danger of collision is correspondingly increased."

" 'It would seem,' says the court, 'that closely built-up portions of a municipal corporation' are those portions of the ·corporation upon which there are buildings upon or near to the street lot line, which operate to obstruct the vision of the user of the street at inersections and crossings."

If, as a matter of fact, the obstructing building upon the southwest corner of the two streets operated to obscure the vision of the user of the street crossing, such crossing was in the closely built-up portion of the municipal corporation, and a speed of more than twenty miles per hour was prima facie unlawful.

I am of the view that the trial court did not give proper consideration to the requirement of §6310-28 GC, that in order to have the right of way the vehicle approaching from the right must have been proceeding "in a lawful manner."

Whether or not it was so proceeding was a question for the jury.

In the case above referred to, on page 158, will be found the following:

"We have already stated that the driver of a lawfully driven vehicle approaching from the right had the right to assume that the operator of the vehicle approaching from the left would obey the law and yield him the right of way. However, if such operator disobeyed the law, and failed or refused to yield the right of way to the vehicle that possessed it, a situation might arise whereby an obligation of care would arise upon the part of the driver having the right of way. If he should discover, just as he was approaching or entering the intersection, that the driver of the vehicle on his left was violating the law, and was not yielding to him the right of way, it then became the duty of the driver lawfully having the right of way not to wantonly injure the other, but to use ordinary care to avoid injuring him, after discovering and appreciating the dangerous peril in which the negligent driver had placed himself."

The facts in the case tend to show that the driver proceeding eastward had crossed the center line of the north and south street and was so far advanced to the east marginal line that the northwardly moving car struck the easterly moving car near the rear wheels. This would indicate that for a considerable distance, at least from the west marginal line, the north moving car would have a clear view of the east moving car, and the driver of the north moving car saw that the driver of the east moving car had entered the intersection and was violating the law whereupon it became the duty of the driver of the north moving car not to wantonly injure the other, but to use ordinary care to avoid injuring him.

Whether or not the doctrine of the "last clear chance" will hold responsible only one who "wantonly" injures the other, is not of consequence.

It appears from the evidence that the streets were slippery. When the car was struck it was pushed or thrown to the northeast corner of the intersection with such violence as to throw the decedent out of the car and to cause her death. It was traveling on the south half of the street, so that the impact must have been of considerable force, unless the roadway was so slippery as to cause the car struck lightly to slide to the northeast intersection.

Whether the blow was a heavy blow, or the streets were very slippery was a matter to be taken into consideration by the jury, to determine whether the driver of the north bound car used ordinary care to avoid injuring the decedent.

In my judgment, the case should have been submitted to the jury under proper instructions as to what constitutes a lawful manner of proceeding by the defendant, and upon the question as to the ordinary care that should have been used by the defendant, if she saw plaintiff's car was not yielding to her the right of way. While the defendant states that she did not see the car in which the decedent was riding either at the time it entered the intersection or thereafter until she struck it, yet the jury might well have found from the facts as testified to that the defendant must have seen it, in spite of her testimony to the contrary.